UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
SEEMA SHARMA, JAVED MUGHAL,        :
SHAIKH HAQ, GUL R. TARIQ,          :
ISHRAT SULTANA KHAN,               :
INDIRABEN PATEL,                   :
                                   :
                Plaintiffs,        :        ORDER
                                   :
           - against -             :        16-cv-9109 (LAP)
                                   :
AIRPORT MANAGEMENT                 :
SERVICES, LLC, d/b/a HUDSON        :
NEWS, HUDSON GROUP (HG)            :
RETAIL, LLC,                       :
                                   :
                Defendants.        :
------------------------------x

LORETTA A. PRESKA, Senior United States District Court Judge:

     Plaintiffs Indiraben Patel, Shaikh Haq, Javed Mughal, Seema

Sharma, Gul Tariq, and Ishrat Sultana Khan (collectively,

"Plaintiffs") bring this suit alleging that their former

employer, Airport Management Services, LLC d/b/a Hudson News,

the Hudson News Company, Hudson Group LLC, and Hudson Group (HG)

Retail, LLC (collectively, "Defendants" or "Hudson News"),

engaged in various federal and state labor law violations.  At

issue here are Plaintiffs' claims of retaliatory discharge in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 215, and New York Labor Law ("NYLL") § 215.  Defendants move

to dismiss those claims (collectively, "Counts IV and V")

pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.   For the reasons set forth below, Defendants' motion to dismiss Counts IV and V of the Amended Complaint is granted with prejudice. (ECF No. 12.)

I.   Background

a. Plaintiffs' Allegations

The following facts are taken from the Amended Complaint ("AC") (ECF No. 6) and are accepted as true for purposes of the instant motion.

Plaintiffs are six mostly-older employees of South Asian descent who worked for Hudson News. (Am. Compl. ¶ 1.)  Each of the Plaintiffs worked in Hudson News' Penn Station District, which includes thirteen stores in Penn Station, two stores at the 33rd Street PATH Station, and three stores at the Javits Center, for various periods of time from as early as 1992 through 2016.  (Id.  ¶¶ 36-41, 42-43.)  Plaintiff Gul Tariq also worked at Hudson News' Grand Central Station District and at a Hudson News store in the United Nations building.  (Id. ¶ 49.)

According to the AC, all Plaintiffs were sometimes referred to as "operations managers" or "managers."  (Id. ¶ 51.)  In this role, Plaintiffs were classified as exempt from overtime pay. (Id. ¶¶ 56-57.)  Plaintiffs contend that in reality, however, their managerial and supervisory duties constituted less than five percent of their work time and that they spent most of their work day doing tasks such as cashier work, performing

2

security guard functions, stocking shelves, transporting

merchandise to and from Defendants' warehouse, and pest control.

(Id. ¶ 55-57.)   Plaintiffs claim that they worked a substantial

amount of overtime hours without compensation due to the fact

that Defendants misclassified them as exempt employees. (Id.

¶¶ 56-57.)

Employees in manager roles have brought claims against

Hudson News for unpaid overtime in the past. (Id. at ¶ 176)

(citing Ahmad v. Hudson News Co., 00-cv-8963 (S.D.N.Y.); Busgith

v. Hudson News Co., No. 0015087/2005, 2008 WL 1771788 (N.Y. Sup.

Ct. Apr. 8, 2008) (denying summary judgment); Khan v. Airport

Mgmt. Servs., 10-cv-7735 (S.D.N.Y.); Velasquez v. Hudson Grp.,

LLC, 10-cv-4833 (S.D.N.Y.); and Nabi v. Hudson News Co., 14-cv-

4635 (S.D.N.Y.) (the "Nabi action")).   Plaintiff pleads on

information and belief that all of these lawsuits, other than

the Nabi action, were "discretely resolved" with Defendants.

(Am. Compl. ¶ 177.)

The Nabi action was brought by employees who worked in

Defendants' Grand Central Station District.   (Id. ¶ 191.)

Though the AC does not state exactly when the Nabi action was

filed, Plaintiffs assert that the pendency of the Nabi action

caused Defendants concern about their potential overtime

liability to Plaintiffs.   (Id. ¶ 190-94.)   Plaintiffs allege

that this unease was due to the fact that the Nabi plaintiffs

held the same manager title as Plaintiffs here.  The physical proximity of Plaintiffs' place of work at Penn Station to Grand Central Station, the location at which the Nabi class members worked, caused Defendants to worry that Plaintiffs could — and would — learn that other managers were participating in a lawsuit to recover unpaid overtime.  (Id. ¶ 191.)  Plaintiffs assert that Defendants' unease heightened on August 17, 2016, when the Nabi court granted collective action certification for the Grand Central Station employees.  (Id. ¶ 190.)

In response to this concern, Plaintiffs allege that Defendants found ways to eliminate managers who worked at the Penn Station District to reduce Defendants' potential liability exposure for unpaid overtime wages.  To that end, Plaintiffs assert that Defendants offered a voluntary termination package to certain managers who, after accepting the package, were replaced by hourly supervisor employees.  (Am. Compl. ¶¶ 100, 179, 191-92.)  The newly hired hourly employees performed the same tasks as managers but were classified as non-exempt and were younger than all but one of the Plaintiffs.  (Id. ¶¶ 100, 104, 108, 110, 112, 178-79, 191-92.)  Plaintiffs allege that Defendants hired these replacement employees to avoid having to switch Plaintiffs to hourly supervisor status, thereby creating a risk that Plaintiffs would question why they had not received overtime pay in the past.  (Id. ¶¶ 177-79, 195.)

On September 1, 2016, each Plaintiff separately met with Hudson News Senior Vice President of Operations, Doug Martino, and two Human Resources representatives at Penn Station District's main office.  (Id. ¶ 74.)  During these meetings, Martino told Plaintiffs, in substance, that they were being terminated due to "lack of business" and that their termination was not performance-based.  (Id. ¶ 75.)  Plaintiffs contend that the "lack of business" reason was a pretextual excuse to conceal Defendants' real motivation: to eliminate employees who might sue Defendants for unpaid overtime in light of the Nabi action. (Id. ¶ 175.)

### i. Indiraben Patel

In October 2015, a General Manager informed Patel that she was being fired because a money bag had been misplaced, in spite of Patel's having an excellent work record.  (Id. ¶ 96.) Patel's then-lawyer challenged Patel's termination as discriminatory and accused Defendants of owing her overtime monies (the "October 2015 Letter").  (Id. ¶¶ 96, 190.)  After receiving the October 2015 Letter, Defendants rehired Patel. (Id. ¶ 99.)  Defendants then terminated Patel again in September 2016.  (Id. ¶ 100.)

ii. Seema Sharma

In or about late 2015, Defendants' Regional Vice President Edwin Soto asked Sharma to meet and speak with one of Defendants' lawyers. (Id. ¶¶ 177-79, 180.) Following this request, Sharma went to Defendants' main office in Penn Station and participated in a phone conversation with Defendants' lawyer. (Id. ¶¶ 180-85.) Defendants' General Manager, Dan Fordyce, was present in the office with Sharma while this call took place. (Id.) Sharma alleges that Defendants' lawyer asked her questions about a former Penn Station manager named Rifat Rizvi, who was a plaintiff in the Nabi case. (Id. ¶ 178.) In response to the questions from Defendants' lawyer, Fordyce sometimes offered his own "correct" answer to the lawyer's question before Sharma could answer herself. (Id. ¶ 182.)

Following this meeting, Sharma alleges that Defendants drafted a declaration for Sharma with a line for her signature at the bottom. (Id. ¶ 183.) Sharma contends that she did not agree with how her duties were described in the draft declaration but that she "may have signed" it because she felt she would have faced adverse consequences if she did not. (Id. ¶¶ 184-85.) Sharma alleges that Defendants warned her not to discuss her conversation with Defendants' lawyer with others. (Id. ¶ 186.)

b. Claims at Issue

Count IV of the AC asserts that the prospect of Plaintiffs' seeking redress for unpaid overtime under the FLSA was among the "but for" causes of Defendants' decision to terminate them and that this constitutes actionable retaliation under the FLSA. 29 U.S.C. § 215(a)(3); (Am. Compl. ¶¶ 196-97.)  Count V of the AC alleges that Defendants engaged in preemptive retaliation in violation of NYLL § 215.  (Am. Compl. ¶¶ 212, 233-34, 235-36.)

On March 10, 2017, Defendants moved to dismiss these claims pursuant to Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).

II.  Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002) (citation and internal quotation marks omitted).  Though a court must accept all factual allegations as true, it gives no effect to "legal conclusions couched as factual allegations."  Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017) (quoting Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citations omitted).  Deciding whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Rahman v. Schriro, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (quoting Iqbal, 556 U.S. at 679).

## III. Discussion

### a. NYLL § 215

Section 215 of the NYLL prohibits an employer from retaliating against an employee for making a complaint about an employer's potential violation of "any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter."  Epifani v. Johnson, 882 N.Y.S.2d 234, 235 (N.Y. App. Div. 2009) (quoting N.Y. Lab. Law § 215); see Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 710 (S.D.N.Y. 2007) (citing Broder v. Cablevision Sys. Corp., 418 F.3d 187, 200 (2d Cir. 2005))

(stating that New York courts' interpretation of NYLL is binding on federal court analyzing state labor law claims).

Defendants argue that NYLL does not govern claims of retaliation motivated by complaints of unpaid overtime wages because NYLL does not govern overtime pay. (Def. Br. 6.) Therefore, overtime compensation claims cannot be a violation of "any provision of this chapter." Plaintiffs argue that § 215 does govern such claims based on a 2010 amendment that expanded NYLL § 215's protections to encompass employee complaints regarding an employer's potential "violat[ion] [of] any provision of this chapter, or any order issued by the commissioner." N.Y. Lab. Law § 215(1)(a) (emphasis added). Plaintiffs cite to Article 19 of the NYLL in support of their claim that overtime pay in New York is governed by an order from the Commission of Labor and that therefore NYLL § 215 permits overtime-related retaliation claims. (Pl. Opp. 3.)

None of the New York Labor Law provisions that Plaintiffs cite in support of this proposition explicitly or implicitly regulates overtime pay in New York.[1] (Pl. Opp. 3 n.1.) On the

---

[1] NYLL § 650, titled "Statement of Public Policy," states a general policy goal of establishing a minimum wage that provides sufficient wages for a person to "provide adequate maintenance for themselves and their families." N.Y. Lab. Law § 650. Plaintiff argues that NYLL § 650 "expressly contemplates the payment of overtime to non-exempt employees." (Pl. Opp. 3 n.1.) Nowhere in § 650 is there an express, much less implied, contemplation of overtime pay. NYLL § 655(b), (continued)

contrary, the N.Y. Compilation of Codes, Rules and Regulations ("NYCRR"), a distinct statutory framework, plainly governs overtime pay in New York.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201 et seq., the Fair Labor Standards Act of 1938 . . . ."). The NYLL does not incorporate NYCRR's overtime regulations expressly or implicitly.  "The Labor Law does not contain any provisions governing overtime compensation." Zutrau v. Ice Sys., Inc., No. 37576-09, 2013 WL 1189213, at *4 (N.Y. Sup. Ct. Mar. 20, 2013) (citing Epifani, 882 N.Y.S.2d at 234).  Accordingly, the AC fails to state a claim of retaliation under NYLL § 215 based on overtime compensation.

---

(continued) titled "Wage Board, Procedure, Report" also does not regulate overtime pay but rather sets out the purpose and function of the Wage Board in New York, which may investigate and provide recommendations on a variety of state-based wage issues, including overtime pay.  N.Y. Lab. Law § 655[5](b). Finally, the Wage Orders of the Commissioner of Labor, NYLL § 652[2], that Plaintiff contends is "incorporate[ed] by reference" into NYLL § 650 also has nothing to do with employees' status with respect to overtime pay.  Rather, it regulates minimum wage. See N.Y. Lab. Law § 652[2] (titled "Minimum Wage").

b. FLSA Claim

Defendants argue that the FLSA's statutory framework does not support Plaintiffs' theory of pre-emptive retaliation and that, even assuming that it did, Plaintiffs fail to state a colorable claim of retaliation pursuant to § 215(a)(3).

Under the FLSA, it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] . . . or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. § 215(a)(3).

It is well established that to make a prima facie case of retaliation, a plaintiff must demonstrate "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Dunn v. Sederakis, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015) (quoting Mullins v. City of N.Y., 626 F.3d 47, 53 (2d Cir. 2010)).

First, Plaintiffs must plausibly demonstrate that they participated in "protected activity." Courts have interpreted the term "protected activity" in the FLSA context to extend beyond the "formal proceeding" scenario that the statute explicitly contemplates. 29 U.S.C. § 215(a)(3). For example,

11

an employee's written or oral complaint to her employer may constitute "protected activity" insofar as the employee's complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 111 (2d Cir. 2015) (quoting Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011) (internal quotation marks omitted)).

Courts have also found protected activity to exist where the "activities [are] less directly connected to formal proceedings," such as where an employer's conduct "has a . . . chilling effect on employees' assertion of rights." Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 879 (2d Cir. 1988) (citation omitted) (hereinafter, "Casey Truck"); see, e.g., Marshall v. Parking Co. of Am.-Denver, Inc., 670 F.2d 141 (10th Cir. 1982) (per curiam) (finding protected activity where employer asked employee to give up his claims for unpaid overtime in exchange for employer's not pursuing employee for failed lie detector test); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240 (S.D.N.Y. 2008) (finding existence of protected activity where employees refused to sign document offered by employer that waived their rights under FLSA). Though courts have looked beyond more traditional notions of protected

12

activity in evaluating retaliation claims in some instances,
such cases in this jurisdiction all share a common and
fundamental element: the employee has taken affirmative action
in asserting her rights under the FLSA prior to the adverse
employment action.  Thus, the law in this jurisdiction requires
plaintiffs to show affirmative conduct by the employee in
establishing the existence of protected activity.  See Ochei v.
Mary Manning Walsh Nursing Home Co., No. 10 Civ. 2548 (CM), 2011
WL 744738, at *6 (S.D.N.Y. Mar. 1, 2011) ("Anything less than a
formal complaint will not support a claim for retaliation.").

Plaintiffs cite to Casey Truck in support of their
assertion that an affirmative act by the employee is not
required to establish the existence of protected activity.  In
Casey Truck, the Court of Appeals cited to a Third Circuit FLSA
case that did not require an affirmative action by the employee
in finding the existence of protected activity.  Casey Truck,
839 F.2d at 879 (citing Brock v. Richardson, 812 F.2d 121, 124
(3d Cir. 1987) (hereinafter, "Richardson")).  In Richardson, the
Court of Appeals for the Third Circuit held that an employer who
retaliated against an employee based on the employer's mistaken
belief that an employee had engaged in protected activity was
"sufficient to bring the employer's conduct within [§
215(a)(3)]."  Richardson, 812 F.2d at 124; (Pl. Opp. 5.)

As a preliminary matter, the holding in Richardson is not binding on this Court.  In Casey Truck, the Court of Appeals cited Richardson as one example in a string of out-of-circuit cases to show how courts have extended the FLSA's protections liberally in accordance with the policy interests belying the Act.  See Casey Truck, 839 F.2d at 879.  This hardly constitutes the Court of Appeals' adoption of the standard employed in Richardson.  Moreover, even if the Court was bound by the holding in Richardson, Plaintiffs' claims would fail.  In Richardson, the employer discharged an employee who it mistakenly believed was engaged in protected activity. Richardson, 812 F.2d at 124-25.  As Defendants point out, Plaintiffs do not allege any facts showing that a mistaken belief on Defendants' part led Plaintiffs to retaliate against them.

Accordingly, the Court adheres to this jurisdiction's binding precedent: the central question in determining the existence of protected activity is whether the employee engaged in affirmative conduct that the employer understood as an assertion of the employee's rights under the FLSA.  See Ochei, 2011 WL 744738, at *6.

Applying these principles here, the AC does not contain any facts indicating that Plaintiffs, other than Patel, affirmatively asserted their rights under the FLSA regarding

14

potential overtime wage violations prior to their termination in September 2016.

Plaintiffs proffer various facts about the Nabi action, presumably in an effort to demonstrate Defendants' mindset leading up to their termination.  As discussed, averments as to Defendants' mindset absent other facts showing that Plaintiffs took affirmative steps to assert their rights under the FLSA prior to their termination is legally insufficient to show protected activity.  Cf. Saigon Grill, 595 F. Supp. 2d 240 (noting that employees signing FLSA authorization cards in preparation for filing FLSA lawsuit against employer and employer's awareness of this fact prior to terminating employees constitutes protected activity).

Furthermore, the Nabi plaintiffs' actions cannot be imputed to Plaintiffs here to establish affirmative conduct.  Not a single fact alleged in the AC indicates that Plaintiffs were even aware of the Nabi action prior to their termination in September 2016, let alone that they were actively preparing to file suit at the time Defendants terminated them.[2]

---

[2] The AC makes allegations regarding Plaintiffs' knowledge of the Nabi suit only as to Sharma.  (Am. Compl. ¶¶ 180-90.)  To that end, the AC is devoid of facts that show Sharma knew that Rizvi was a plaintiff in the Nabi action at the time of her interview with Defendants' lawyer.  (Id.)  It also does not allege that Sharma knew that interview was related to the Nabi action. (Id.)  In sum, the AC does not plead any facts indicating that Sharma knew about the Nabi action prior to her (continued)

Plaintiffs cite Munguia v. Bhuiyan, CV 2011 3581(JBW), 2012 WL 526541 (E.D.N.Y. Feb. 16, 2012), to argue that the filing of a formal complaint is not necessary for a plaintiff to plead a plausible claim of retaliation.  In Munguia, the court held that an employee's request for tax documents constituted protected activity because the employer knew that the employee was requesting the documents to make a formal complaint.  Id. at *3. Here, Plaintiffs do not assert that they requested documents or engaged in any affirmative conduct with regards to the Nabi action that, even absent words, would have signaled to Defendants that they were planning to make a formal complaint or institute a formal proceeding prior to their termination.  See id. at *2-3.

As to Defendants' lawyer's interview of Sharma, Plaintiffs presumably plead facts about this to show Defendants' mindset. (Am. Compl. ¶¶ 180-81.)  As discussed, this is not the relevant standard in evaluating whether Sharma plausibly engaged in protected activity.  See Ochei, 2011 WL 744738, at *6 ("Anything less than a formal complaint will not support a claim for

_____

(continued) termination in September 2016.  At best, the AC pleads that Sharma had "already learned" of the Nabi action by August 2017.  (Id. ¶¶ 193-94.)  But the AC does not indicate how Sharma would have "learned" of the Nabi action outside of her interview with Defendants' lawyer, and there are no facts in the AC alleging that Sharma did in fact learn of the Nabi suit during the interview.  (Id.)

16

retaliation"). Furthermore, the allegations pertaining to Sharma's meeting do not demonstrate that Sharma engaged in protected activity, even if the environment of the meeting was uncomfortable or intimidating. The facts alleged regarding Sharma's handling of the draft declaration do not indicate that she affirmatively complained about its contents to Defendants in a "sufficiently clear and detailed" way such that Defendants would have understood Sharma as "assert[ing] rights protected by the statute and a call for their protection." Greathouse, 784 F.3d at 111; (Am. Compl. ¶¶ 186–88.) General Manager Fordyce's instruction to Sharma to keep their conversation with Defendants' lawyer confidential, which Plaintiffs also presumably allege to demonstrate an environment of intimidation, also does not indicate that Sharma engaged in protected activity. (Id. ¶ 189); see Landaeta v. N.Y. & Presbyterian Hosp., Inc., 12 Civ. 4462(JMF), 2014 WL 836991, at *8 (S.D.N.Y. Mar. 4, 2014) (citing Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (holding that plaintiff's FLSA retaliation claim failed because "[m]ore is needed — such as an allegation . . . to make an affirmative assertion of rights protected by the statutes"). Though the AC pleads facts that may have amounted to a less-than-comfortable situation for Sharma, it does not sufficiently demonstrate that Sharma could prove a retaliation claim.

Accordingly, Plaintiffs other than Patel have not
sufficiently pleaded that they engaged in protected activity and
therefore do not state a cause of action pursuant to Section 215
of FLSA.

Regarding Patel, a letter from her former attorney to
Defendants in October 2015 "accusing the company of failing to
pay overtime monies owed to Patel" falls squarely within the
type of activity that Section 215(a) protects.  29 U.S.C.
§ 215(a)(3).  Therefore, Plaintiff Patel has plausibly pled this
element in establishing a prima facie case of retaliation.
Patel also clearly suffered an adverse employment action when
Defendants terminated her in September 2016.  See Belizaire v.
RAV Investigative and Sec. Servs. Ltd., 61 F. Supp. 3d 336, 348
(S.D.N.Y. 2014) (citing Caskey v. Cty. of Ontario, 560 F. App'x
57, 58-59 (2d Cir. 2014)) (explaining that termination of
employment constitutes an adverse employment action); (Am.
Compl. ¶ 69.)

Plaintiff Patel, however, has not provided facts sufficient
to establish a plausible causal link between the October 2015
Letter and her termination in September 2016.  "In order to
establish [a] causal connection, a plaintiff must allege (1)
direct proof of retaliatory animus directed against the
plaintiff; (2) disparate treatment of similarly situated
employees; or (3) that the retaliatory action occurred close in

18

time to the protected activities." McNair v. NYC Health & Hosp. Co., 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001) (citing DeCintio v. Westchester Cty. Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)).

First, Patel does not proffer any facts demonstrating that the October 2015 letter from Patel's then-lawyer directly caused Defendants to terminate her in September 2016, other than conclusorily stating that this letter motivated Defendants' overarching concern about overtime liability leading up to Plaintiffs' discharge. (Am. Compl. ¶ 190.) The allegations in the AC do not tangibly connect Patel's letter or, more broadly, Defendants' alleged overarching concern about overtime wage liability to which Patel's letter contributed, to Defendants' decision to terminate Plaintiffs. See Gaughan v. Rubenstein, 261 F. Supp. 3d 390, 421 (S.D.N.Y. 2017) (holding that absence of factual underpinnings of alleged causal connection between an employee's protected activity and adverse action by employer is inadequate in pleading causation).

Second, Patel does not show disparate treatment of similarly situated employees here because she was one of six managers terminated on September 1, 2016, the other five of whom did not engage in protected activity as she did. See Thermidor v. Beth Israel Med. Ctr., 683 F. Supp. 403, 413-14 (S.D.N.Y. 1988) (finding retaliatory animus where employee was disciplined

for failing to follow company procedure in certain situation but other similarly situated employees who acted as plaintiff had in same situation were not); (Am. Compl. ¶ 69.)

Plaintiffs also do not provide adequate factual support to show that the younger replacement supervisors were similarly situated to Plaintiffs such that Plaintiffs suffered disparate treatment as to them.  See Bio v. Fed. Express Corp., 424 F.3d 593, 597 (7th Cir. 2005) (holding that court should look to whether employees held same job description, were subject to same standards, reported to the same supervisor, and had comparable experience and qualifications in determining whether employees are comparable).  Defendants do not plead facts sufficient to establish that the younger supervisors hired to replace them took on only responsibilities that Plaintiffs had as managers, that they reported to the same personnel, or that they were held to the same work standards, thus making them suitable for comparison here.

Finally, the temporal connection between Patel's October 2015 letter and her termination in September 2016 is far too attenuated to state plausibly a causal connection.  See Azeez v. Ramaiah, No. 14-cv-5623, 2015 WL 1637871, at *8-9 (S.D.N.Y. Apr. 9, 2015) (one year delay between employee's termination and protected activity is insufficient temporal link to show causation). If anything, Defendants' rehiring of Patel after

receiving her October 2015 letter indicates they responded to the threat of potential overtime wage litigation by keeping Patel employed, not firing her approximately one year after receiving it.  Absent other facts, the lapse of approximately one year in this situation is insufficient to establish a causal link between the October 2015 Letter and Patel's termination. See Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554–55 (2d Cir 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)) ("In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action'").  Accordingly, Plaintiff Patel fails to state a claim of retaliation under the FLSA as well.

In sum, Plaintiffs have failed to meet their burden under Rule 12(b)(6) of the Federal Rules of Civil Procedure in stating a claim for retaliatory discharge under 29 U.S.C. § 215(a)(3).

IV.   <u>Conclusion</u>

For the foregoing reasons, Defendants' motion (ECF No. 12) is GRANTED.   Counts IV and V of the Amended Complaint (ECF No. 6) are dismissed with prejudice.

SO ORDERED.

Dated:   New York, New York
         March 22, 2018

_Loretta A. Presla_

LORETTA A. PRESKA
Senior United States District Judge